J-S37015-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

K.M.D.                 :     IN THE SUPERIOR COURT OF
                                   :          PENNSYLVANIA
                                   :

        v.                         :
                                   :
                                   :

J.D.D.                   : 
                                   :
                                   :

APPEAL OF: K.M.D.         :     No. 214 MDA 2017

Appeal from the Order Entered December 30, 2016
In the Court of Common Pleas of Lebanon County
Civil Division at No:  2011-20752

BEFORE:   STABILE, MOULTON, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:               **FILED JULY 17, 2017**

K.M.D. ("Mother") appeals from the order entered December 30, 2016, in the Court of Common Pleas of Lebanon County granting J.D.D. ("Father") permission to relocate to Huntingdon County with the parties' minor children, W.D., a male born in November 1999, and M.D., a female born in May 2001 (collectively, "the Children").  After careful review, we vacate and remand with instructions.

We glean the factual and procedural history of this matter from the certified record.  Mother and Father are former spouses who married in 2000, separated in 2011, and divorced in 2014.  Mother commenced the underlying custody proceedings by filing a complaint for custody on March 20, 2013.  The trial court entered an agreed-upon custody order on February 7, 2014, pursuant to which the court awarded the parties shared legal and physical custody of the Children.  On December 24, 2014, Father filed a

petition for modification of the custody order, in which he requested primary physical custody of the Children. The court entered an agreed-upon custody order on February 20, 2015, awarding primary physical custody to Father and maintaining shared legal custody with both parties. The order further awarded Mother partial physical custody of the Children every Wednesday afternoon from school dismissal until 5:00 p.m. during the school year, and from 3:00 p.m. to 6:00 p.m. during the summer. In addition, the order awarded Mother partial physical custody one weekend per month from Friday afternoon at 5:00 p.m. until Sunday afternoon at 5:00 p.m.

On September 2, 2016, Father filed a notice of proposed relocation, indicating that he intended to move from Lebanon County to Huntingdon County. Mother, acting *pro se*, filed a counter-affidavit objecting to the relocation on September 16, 2016. On November 1, 2016, Mother, now represented by counsel, filed a petition for special relief, in which she again objected to the relocation, and requested that the trial court enter an order requiring that Mother and the Children attend counseling in order to "repair their relationship." Petition for Special Relief, 11/1/16, at 3.

The trial court held a hearing on Father's proposed relocation on December 29, 2016. Mother failed to appear at the hearing. However, Mother's counsel did appear. Mother's counsel endeavored to explain her absence to the court, and the following discussion took place.

> [Mother's counsel]: To put on the record, Your Honor, I mean, I think I have to explain that there was -- that the parties have reached an agreement in principle. It was my

understanding based on the fact that my client had contacted me and stated that she had a pre-planned vacation. I believed that they were going to reach an agreement. I told her that I believe that we're not going to have a relocation hearing. You are going to be able to reach an agreement.

However, with the holidays, being we were playing phone tag, we weren't able to work out the different terms as far as exactly how things were going to play out.

So at this point I haven't had -- I attempted to contact my client. I haven't been able to do so. Yesterday, today, the day before I tried to reach out to her, and have not heard back from her.

So I'm in a position where I don't think I can appropriately state what her position is. I can state where we were at as far as what the agreement in principle was, but I think that's all that I can do.

\*\*\*

THE COURT: . . . . If she was that concerned and didn't get a signed agreement saying -- let me ask you this so the record is clear: The agreement, whatever the terms might have been, didn't dispute that he was going to relocate; is that correct?

[Mother's counsel]: That's correct.

THE COURT: Well, then it's an academic matter. She just doesn't agree with all the terms and conditions. But had she been here, I would have asked her the same thing, you know: Are you opposing the relocation?

\*\*\*

Let me say this for the record: She knew it was going to be a relocation; correct?

[Mother's counsel]: Your Honor –

THE COURT: She just thought there were some other terms.

[Mother's counsel]: Prior to this -- prior to this date I had filed a Petition for Special Relief to work out -- to have this worked out prior to relocation, establishing counseling so when we got to the relocation there could be a conversation, or have some third-party therapist come in and say what the relationship is between mom and the rest of the family.

However, because -- I explained to my client as well as in talking with [Father's counsel] about the situation, I was -- my client was very aware that the chances of her being successful in fighting the relocation were minimal, but it was really her goal to try to re-establish her relationship with her kids.

So I tried to do that before, but I put it on hold because I figured if we could work out an agreement, why have a contentious hearing, before we have the kids take the stand and have these different roles.

THE COURT: Fair enough. Let me rule this way:

N.T., 12/29/16, at 2-6.

The trial court then dictated the order complained of on appeal, which it revised slightly and entered on December 30, 2016. In its order, the court granted Father permission to relocate with the Children to Huntingdon County. The order further provided that the Children's counselor should refer them to a new counselor in Huntingdon County, and that Mother would be able to contact the Children's new counselor to discuss the possibility of family counseling. The order concluded by stating that the parties' prior custody arrangement "shall continue in full force and effect until and unless either party requests a modification of the existing Custody Order." Order, 12/30/16, at 2. Mother timely filed a notice of appeal on January 27, 2017, along with a concise statement of errors complained of on appeal.

- 4 -

Mother now raises the following questions for our review.

1. Did the Trial Court err when it failed to hold a full hearing with respect to [Father's] Petition to Relocate, as required by 23 Pa.C.S. § 5337?

2. Did the Trial Court err when it failed to address the ten relocation factors, as required by 23 Pa.C.S. § 5337, when it granted [Father's] Petition to Relocate?

3. Did the Trial Court err when it modified the existing custody order without requiring that [Father] follow the dictates of Pa.R.C.P. 1915.17(f)(1), requiring the filing of a Petition to Modify Custody once a counter-affidavit objecting to the proposed relocation has been served upon [Father] and filed with the Court?

4. Did the Trial Court err when it failed to hold a full hearing, pursuant to 23 Pa.C.S. § 5337(g)(1), prior to modifying the existing custody order?

Mother's Brief at 4 (suggested answers omitted).

We review Mother's claims mindful of our well-settled standard of review.

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***V.B. v. J.E.B.***, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." ***S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted). The factors to be considered by a court when awarding custody are set forth at 23 Pa.C.S.A. § 5328(a).

> **(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>
> (3) The parental duties performed by each party on behalf of the child.
>
> (4) The need for stability and continuity in the child's education, family life and community life.
>
> (5) The availability of extended family.
>
> (6) The child's sibling relationships.
>
> (7) The well-reasoned preference of the child, based on the child's maturity and judgment.
>
> (8) The attempts of a parent to turn the child against the other parent, except in cases of domestic

violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

In addition, when considering a parent's request to relocate with his or her child, trial courts must consider the ten factors set forth at 23 Pa.C.S.A. § 5337(h).

**(h) Relocation factors.--**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

> (10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h).

Instantly, in the order complained of on appeal, the trial court explained that it granted Father permission to relocate to Huntingdon County "following comments by [M]other's counsel, [] in recognition of the fact she is not here to present any testimony to oppose the relocation, [and in recognition of] the fact that but for some counseling issues she would not have opposed the relocation[.]" Order, 12/30/16, at 1. In its opinion, the court set forth its findings with respect to the Section 5337(h) factors. In discussing the factors, the court emphasized that permitting Father to relocate with the Children to Huntingdon County would allow the Children to live on a family farm and be closer to members of their extended family. Trial Court Opinion, 2/15/17, at 8-11. The court did not set forth any findings with respect to the Section 5328(a) factors.

We first address Mother's first, second, and fourth issues, which are interrelated. In these issues, Mother argues that the trial court erred by failing to conduct an adequate hearing on Father's notice of proposed relocation prior to entering the order complained of on appeal. Mother's Brief at 13-16, 18-19. Mother contends that she did not consent to Father's proposed relocation, and that the court's conclusion that she did is not supported by the record. *Id.* at 13-14. Mother further contends that, because she did not consent to Father's relocation, the court was obligated

to hear testimony before reaching a decision on Father's request to relocate.[1] *Id.* at 13-16. We agree.

Initially, we stress that we cannot conclude from the record before us that Mother consented to Father's proposed relocation. Mother filed a counter-affidavit on September 16, 2016, as well as a petition for special relief on November 1, 2016, indicating that she opposed the relocation. While counsel stated during the December 29, 2016 hearing that Mother and Father were negotiating an agreement that would allow Father to relocate, the details of that agreement were never finalized. N.T., 12/29/16, at 3. In addition, counsel's statements suggest that Mother was only negotiating the

_____

[1] As part of her fourth issue, Mother argues that the trial court erred by failing to discuss the factors set forth at Section 5328(a). We disagree. This Court has held that trial courts need not address the Section 5328(a) factors unless the court makes, or is asked to make, a change to the parties' underlying "form of custody." *S.W.D.*, 96 A.3d at 406. If a court merely addresses "a discrete custody-related issue," such as "a dispute over a custody-exchange location; which youth sports the children should play; or whether a parent should be required to have children's toys, beds, or other things in his or her house[,]" consideration of the Section 5328(a) factors is not required. *Id.* at 402-03 (citing *M.O. v. J.T.R.*, 85 A.3d 1058 (Pa. Super. 2014)) (footnote omitted). Here, the court did not change, nor was it asked to change, the parties' underlying form of custody. In his notice of proposed relocation, Father indicated that no change to the current custody schedule would be necessary, and the court did not include any changes in the order complained of on appeal. While the court included provisions in the order addressing the Children's need for counseling in Huntingdon County, it is clear that the Children's need for counseling is a discrete custody-related issue along the lines of those described in *S.W.D.*, and does not require consideration of the Section 5328(a) factors. However, if the court changes, or is asked to change, the underlying form of custody following remand, the Section 5328(a) factors must be discussed.

agreement because she believed that her chances of opposing the relocation successfully were "minimal." *Id.* at 5. Counsel did not state that Mother supported Father's relocation, nor did he state that Mother had no objection to the relocation. To the contrary, counsel made it clear during the hearing that he was not able to "appropriately state what her position is." *Id.* at 3.

It follows that the trial court erred by granting Father's proposed relocation without taking testimony. As argued by Mother in her brief, "[t]he party proposing the relocation has the burden of establishing that the relocation will serve the best interest of the child[.]" 23 Pa.C.S.A. § 5337(i)(1). Here, the trial court did not hold Father to his burden of proof, and Father did not present any evidence at all that his proposed relocation would be in the Children's best interests. While the court addressed each of the Section 5337(h) factors in its opinion, the court's findings are completely without evidentiary support. This Court may not accept a trial court's findings unless those findings are supported by competent evidence of record. *V.B.*, 55 A.3d at 1197. Accordingly, we must vacate the order granting Father permission to relocate to Huntingdon County, and remand this matter for a new relocation hearing.

We next address Mother's third issue on appeal, in which she argues that the trial court erred by modifying the existing custody order without requiring Father to file a petition for modification of custody. Mother's Brief at 17. Mother directs our attention to Pennsylvania Rule of Civil Procedure 1915.17(f), which provides as follows.

(f) If the party proposing the relocation has received notice of objection to the proposed move after serving a notice of proposed relocation as required by 23 Pa.C.S. § 5337 et seq., the party proposing relocation shall file:

(1) a complaint for custody or petition for modification, as applicable;

(2) a copy of the notice of proposed relocation served on the non-relocating party;

(3) a copy of the counter-affidavit indicating objection to relocation; and

(4) a request for a hearing.

Pa.R.C.P. 1915.17(f).

Mother is correct that Rule 1915.17(f) required Father to file a petition for modification of custody after receiving her counter-affidavit opposing relocation. Accordingly, on remand, Father must file a petition for modification before any relocation hearing takes place.[2]

Based on the foregoing, we conclude that the trial court erred by granting Father permission to relocate without taking testimony. On remand, Father must comply with Rule 1915.17(f) by filing a petition for modification of custody. After Father files the petition for modification, the

_____

[2] We observe that Rule 1915.17(g) provided Mother with the option to file her own petition for modification of custody if Father failed to do so. **See** Pa.R.C.P. 1915.17(g) ("If the non-relocating party has been served with a notice of proposed relocation and the party proposing relocation has not complied with subdivision (f) above, the non-relocating party may file: . . . [a] petition for modification[.]"). Nonetheless, Mother's decision not to file a petition does not excuse Father's failure to comply with the mandatory language of Rule 1915.17(f).

court must conduct a new hearing, during which Father may present evidence in support of his requested relocation. Only then may the court grant or deny permission to relocate.

Order vacated. Case remanded for further proceedings consistent with this Memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/2017